H. Wayne MEACHUM *v.*
WORTHEN BANK & TRUST COMPANY, N.A.

CA 83-468                                              682 S.W.2d 763

Court of Appeals of Arkansas
En Banc
Opinion delivered January 16, 1985
[Rehearing denied February 13, 1985.*]

*CORBIN and GLAZE, JJ., would grant rehearing.

*Haley, Polk & Heister, P.A.,* by: *Peter B. Heister,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

MELVIN MAYFIELD, Judge. This is an appeal from a trial judge's decision that found the appellant, H. Wayne Meachum, liable as guarantor of a lease agreement between Telecompo of Arkansas and the appellee, Worthen Bank & Trust Company.

Evidence not in dispute reveals that appellant is an attorney who resides and practices in Dallas, Texas. He is also an officer, a director, and general counsel of Composition Management Company (CMC), a Texas corporation with its principal place of business in Dallas. CMC was intended to be the center for a network of outlying stations which would feed data to CMC for computerized typesetting. CMC's marketing director, Jerry Sizemore, negotiated with Arkansas resident Charles Thornton, who agreed to set up a station in Conway, Arkansas, with CMC providing part of the financing. Pursuant to this agreement, Thornton formed Telecompo of Arkansas. CMC then purchased two computers and allied items and sold them for $19,936.68 to the appellee, Worthen Bank, whose leasing agent, First Arkansas Leasing Corporation (FALCO), in turn leased the equipment to Telecompo. Before agreeing to purchase and lease the equipment, the appellee required several guaranties including the individual guaranty of appellant. The appellant sent his financial statement to the appellee and then signed the lease guaranty in Dallas in his individual capacity and as an officer for CMC.

Telecompo subsequently defaulted on the lease agreement. Six months later the appellee repossessed the equipment and sixteen months after repossession the equipment was sold for $1,000.00. Meanwhile, the appellee instituted this action on the lease agreement and on trial the court found Telecompo and each of the individual guarantors jointly and severally liable for the amount of the remaining lease payments minus the $1,000.00 received from the sale.

The trial court found jurisdiction over the appellant based on our long-arm statute, Ark. Stat. Ann. § 27-2502 (Repl. 1979), which states that a trial court may exercise

personal jurisdiction over a person as to a cause of action "arising from the person's . . . transacting any business in this State. . . ." The appellant's first argument on appeal is that he did not transact any business in Arkansas within the meaning of the statute and, therefore, the trial court erred in finding that it had personal jurisdiction over him. We do not agree.

It has been held that each question of jurisdiction must be decided on a case-by-case basis. *Gardner Engineering Corp.* v. *Page Engineering Co.,* 484 F.2d 27 (8th Cir. 1973). In *Jagitsch* v. *Commander Aviation Corporation,* 9 Ark. App. 159, 655 S.W.2d 468 (1983), this court set out the two-part analysis to be used in determining whether a trial court had jurisdiction over a nonresident defendant. First, we must decide whether the nonresident's actions satisfy the "transacting business" requirement of our long-arm statute and, second, we must decide whether the exercise of *in personam* jurisdiction is consistent with due process.

The Arkansas legislature intended for the term "transacting business" to be construed "to expand jurisdiction to the modern constitutional limit." *Mountaire Feeds, Inc.* v. *Agro Impex, S.A.,* 677 F.2d 651 (8th Cir. 1982); *SD Leasing, Inc.* v. *Al Spain and Associates, Inc.,* 277 Ark. 178, 640 S.W.2d 451 (1982). Using this liberal standard, we think the appellant in the instant case was "transacting business" in Arkansas within the meaning of our long-arm statute. Appellant was extensively involved with CMC as director, officer and general counsel, and CMC was directly responsible for the formation of Telecompo, the lessee corporation. Telecompo was formed in Arkansas and the appellant personally drafted its articles of incorporation and mailed them to Arkansas. CMC was also instrumental in the negotiation and execution of the lease agreement between appellee and Telecompo and the appellant's individual guaranty was clearly required by appellee because of his extensive involvement with CMC. These same facts also indicate that the court's exercise of personal jurisdiction was consistent with due process.

In *International Shoe Co.* v. *Washington,* 326 U.S. 310

(1945), the United States Supreme Court stated that due process requires only that certain "minimum contacts" exist between the nonresident and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *Id.* at 316. The Supreme Court further discussed the minimum contacts concept in *McGee* v. *International Life Ins. Co.,* 355 U.S. 220 (1957), where it held that for purposes of due process, a single contract could provide the basis for the exercise of jurisdiction over a nonresident defendant if the contract had "substantial connection with [the forum] State."

We think that the lease agreement which appellant guaranteed clearly had substantial connection with Arkansas. In reaching this conclusion, we have considered the five factors outlined by the Eighth Circuit Court of Appeals in *Aftanese* v. *Economy Baler Co.,* 343 F.2d 187 (8th Cir. 1965) and recognized by this court in *Jagitsch, supra.* These factors are to be considered in determining whether due process requirements have been satisfied and are listed in *Jagitsch* as follows:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience to the parties.

*Id.* at 163.

Although appellant's contacts with Arkansas may have been few, we find that those contacts were substantial in nature and quality. Knowing that the appellee would require his individual guaranty, the appellant sent his financial statement to the appellee in Arkansas and then signed the guaranty agreement which was contained in the lease of personal property between two Arkansas corporations, and admits that he knew the lease would be sent to the appellee in Arkansas, that the property was in Arkansas, and that the payments would be made in Arkansas. In *Telerent Leasing Corp.* v. *Equity Associates,* 245 S.E.2d 229 (N.C. Ct.

App. 1978), the court held that the fact that a nonresident appellant guaranteed a debt owed to a North Carolina resident was by itself sufficient contact to withstand a due process challenge to the exercise of *in personam* jurisdiction over that appellant.

The remaining factors are also present in this case. The cause of action is directly related to the appellant's signing as guarantor of an Arkansas contract, and then failing to carry out his promise to guarantee; the Arkansas courts are obviously interested in providing a forum for Arkansas citizens to resolve disputes over contracts executed in Arkansas; and considering the fact that most of the parties were residents of this state, we think the convenience of the parties was best served by the hearing of the case in Arkansas.

The appellant points out that there is no evidence that he ever entered the State of Arkansas in connection with the lease or the guaranty, but in *SD Leasing, supra,* the court found sufficient contacts to meet due process standards even though the defendant never physically entered the State of Arkansas. In *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U.S. 286 (1980), the Court stated that "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* at 297. We think that when a party personally guarantees a lease between two Arkansas corporations, he should reasonably anticipate being haled into court in Arkansas if the lease goes into default. We find that due process requirements were met in this case, and the trial court was correct in finding that it had jurisdiction over appellant.

Appellant's second argument is that the trial court erred in finding that appellee's disposition of the computer equipment was commercially reasonable under the applicable provisions of the Commercial Code. See Ark. Stat. Ann. § 85-9-504(3) (Supp. 1983). The lease agreement provided that upon repossession, appellee was entitled to recover from Telecompo all future rental payments less the rental or other value of the leased property. Appellant argues that the 22-month delay between the default and the

disposition by sale, combined with the low sale price, made the sale commercially unreasonable. Therefore, it is argued, the court should have applied the presumption that the value of the collateral was equal to the debt, *Henry* v. *Trickey*, 9 Ark. App. 47, 653 S.W.2d 138 (1983), and should not have allowed appellee to recover the unpaid rental minus ·the resale price. In support, the appellant cites *McMillan* v. *Meuser Material & Equipment Co.*, 260 Ark. 422, 541 S.W.2d 911 (1976), which held that a 14-month delay before a resale was commercially unreasonable under the Code.

Appellee tacitly agrees that this issue is governed by the Commercial Code and argues that it made timely, good faith efforts to resell but the equipment had become obsolete and no bids were received (except for one that was later withdrawn). The appellee distinguishes *McMillan*, because there the plaintiff did not attempt to resell for a year, whereas the plaintiff in the instant case began immediate efforts to resell the equipment.

There was evidence that six months of the 22-month period between default and disposition was occasioned by Telecompo's request for a delay in repossession so that it could try to work out some arrangement with CMC. During that period both Worthen and Telecompo tried to sell the computers. After repossession, appellee Worthen made extensive efforts to sell the equipment but could not find a buyer. Appellee's expert testified that the equipment could not be sold because (1) for this area the equipment was overpriced and cheaper computers could be found that would do the same job, (2) there was a lack of software available for new programs for these particular units, and (3) these units were cassette driven machines which were obsolete after the advent of floppy disc drives. He said appellee was lucky to get anything for the equipment.

In *Thomas* v. *Int'l Harvester Credit Corp.*, 5 Ark. App. 244, 636 S.W.2d 296 (1982), we said under the evidence there the question of a commercially reasonable disposition was one of fact. We think that is true in this case also. We cannot say the trial judge's finding was clearly against the prepon-

derance of the evidence and, therefore, we do not set it aside. ARCP 52(a).

Appellant's last point presents two arguments: (1) the lease was so subsequently altered as to excuse performance, and (2) the lease is void for lack of mutuality.

The first argument is based upon the fact that two 24K memory expansions were not delivered to the lessee Telecompo. Appellant says the plain intent of the lease was for appellee to lease this equipment and that the failure to do so constituted a material alteration of the lease that the appellant guaranteed. *Moore* v. *First National Bank of Hot Springs*, 3 Ark. App. 146, 623 S.W.2d 530 (1981), is cited as authority for holding that a material alteration in the obligation assumed, made without the assent of the guarantor, discharges him.

Appellee responds by arguing that there was no material alteration in the terms of the lease in this case. First, appellee says the failure to deliver the 24K memory equipment left the lessee with equipment that had only a 16K memory capacity, but that there was no specification anywhere in the lease that called for equipment with any certain memory capacity. Second, appellee says even if a term of the lease was altered as alleged by appellant, such an alteration could not be found material because there is no evidence that the difference between a 16K and a 24K memory capacity would have any effect on the operations of the lessee had that corporation become operative. Appellee's computer expert so testified and also said this difference did not, in fact, affect the resale value of the equipment. Third, appellee says there was really no alteration of the lease but only a mutual mistake in failing to deliver the 24K memory equipment as invoiced to appellee's leasing agent FALCO. The evidence does show that neither FALCO nor the lessee knew the memory capacity of the equipment until after the lessee's operation had failed and there is no evidence that either party agreed to accept any equipment other than that invoiced. We agree that the trial court could hold there was no material alteration in the lease for any or all of the three reasons advanced by appellee.

We think the record will also support the court's rejection of appellant's contention that the lease was void for lack of mutuality. The lease did exempt appellee from liability if the supplier or manufacturer failed to fill appellee's order for the computer equipment to be leased. However, *Moore* v. *First National Bank, supra,* rejected the argument that this type provision made a lease void for lack of mutuality. Although the lease also contained an indemnity agreement, the appellee was clearly obligated to perform under the lease and the court did not err in refusing to hold the lease void for lack of mutuality.

Affirmed.

GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Judge, dissenting. I must dissent. Our Supreme Court in *SD Leasing, Inc.* v. *Al Spain & Associates, Inc.,* 277 Ark. 178, 640 S.W.2d 451 (1982), held that this State's long-arm statute conferred jurisdiction on an Arkansas court by the completion of the contract in Arkansas although prior negotiations and the contract's subject matter were in another state. Dr. Robert A. Leflar politely referred to *SD Leasing* as a "marginal case." *See* Leflar, *Conflict of Laws: Arkansas, 1978-82,* 36 Ark.L.Rev. 191, 195 (1982-83). *Webster's New Collegiate Dictionary* defines "marginal" as close to the lower limit of qualification, acceptability, or function. If the *SD Leasing* case is marginal, I must say the instant case clearly falls short of the minimum contacts — or if you will the lower limit of qualification — necessary to confer jurisdiction on Arkansas. Although the majority opinion refers to "appellant's contacts with Arkansas being few," I submit that the contacts sufficient to confer jurisdiction on this State are simply non-existent.

In reviewing this case, the reader must keep in mind that this Court is affirming the trial court's decision finding the appellant, a Texas resident, liable as a *personal* guarantor of a lease agreement between two Arkansas corporations. Appellant's only contact with these Arkansas corporations was by virtue of his relationship with Compo-

sition Management Company (CMC), a Texas corporation. He was CMC's general counsel and one of its officers and directors. Admittedly, Jerry Sizemore, CMC's Marketing Director, came to Arkansas and negotiated the sale of two computers to the appellee Worthen Bank which, in turn, leased the equipment to the second Arkansas corporation, Telecompo. Worthen Bank required several guarantees regarding its lease with Telecompo; one was required of the appellant. Appellant's only involvement with the leasing arrangements that took place in Arkansas was his mailing a financial statement and lease-guarantee to Worthen Bank.

No one questions Arkansas' jurisdiction over CMC, most likely because CMC (through Sizemore) conducted the business negotiations in Arkansas that led to the lease which was executed and performed in this State.

Indisputably, the appellant was never physically within the State of Arkansas. The financial forms (including the individual guarantee) were prepared in Arkansas and mailed to the appellant in Texas. Upon receipt of these instruments, appellant signed and returned them by mail. It is also unrefuted that appellant never personally participated in any of the negotiations in Arkansas that led to the lease in controversy.

The majority opinion relies on the fact that appellant was involved with CMC as a director, officer and general counsel and that CMC was directly responsible for the formation of Telecompo. Obviously, appellant had a close connection with CMC, but I am puzzled how my colleagues can parlay CMC's contacts with this State into exercising *in personam* jurisdiction over appellant. Again, the majority in part relies upon *World-Wide Volkswagen Corp.* v. *Woodson,* 444 U.S. 286 (1980), stating that "appellant should have reasonably anticipated being haled into court in Arkansas if the lease went into default." Of course, appellant's expectations or anticipations are not the benchmark for determining whether his contacts with Arkansas were sufficient to withstand a due process challenge to the exercise of *in personam* jurisdiction over him.

In sum, the majority opinion is premised on appellant's relationship with CMC to substantiate this Court's decision to extend *in personam* jurisdiction over him. Unquestionably, we have fewer contacts here than in *SD Leasing*.

Under the test of minimum contacts and fair play, I am convinced that Arkansas' assumption of *in personam* jurisdiction over appellant violates his due process rights. I cannot conceive of our Supreme Court's interpreting its long-arm statute to gather in out-of-state residents who, like appellant, have virtually no personal contacts with our State's borders.

I would reverse.

I am authorized to state that Corbin, J., joins in this dissent.