## Wesley RICE *v.* SD LEASING, INC.

CA 84-237                                        686 S.W.2d 450

### Court of Appeals of Arkansas
### Division II
### Opinion delivered March 20, 1985

*Guy H. "Mutt" Jones, Sr., Phil Stratton,* and *Casey Jones,* by: *Phil Stratton,* for appellant.

*Rose Law Firm, A Professional Association,* by: *R. Davis Thomas, Jr.,* for appellee.

TOM GLAZE, Judge. In this appeal, the sole issue is whether sufficient minimum contacts exist between appellant Wesley Rice and the State of Arkansas to sustain the trial court's exercise of *in personam* jurisdiction over him. Based upon the Supreme Court's decision of *SD Leasing, Inc.* v. *Al Spain and Associates, Inc.,* 277 Ark. 178, 640 S.W.2d 451 (1982), we affirm the trial court's decision. *See also Meachum* v. *Worthen Bank & Trust Co.,* 13 Ark. App. 229, 682 S.W.2d 763 (1985).[1]

---

[1] In *Meachum,* the author of this opinion and Judge Corbin registered their disagreement with our appellate court's recent interpretations of this State's long-arm provisions. Because *Spain* and *Meachum* are now precedent, we both join in applying when applicable those decisions and their underlying rationale to future cases. Because we find the *Spain* case

The events revolving around the lease transactions in this case are almost identical to those in *Spain, supra.* The appellee, SD Leasing, an Arkansas corporation, sued Rice, a Florida resident, claiming sums due it by virtue of Rice's default under seven lease agreements and guarantees. All American Vending, a Florida business, originally owned these leases and guaranties covering video machines which it later sold to appellee.

The documents upon which SD Leasing based its claim were all signed in Florida. Wesley Rice, an official and the only stockholder of ABP Computers (ABP), decided that ABP should have a game room. ABP ordered seven video units from All American but actually executed leases with Peoples Acceptance Corporation (PAC), a Florida corporation, as the lessor.[2] ABP's first payment or deposit under the leases was due on September 29, 1981. However, the record reflects that on this same date, Rice executed SD Leasing's customer credit checklist authorizing SD Leasing to obtain credit information on ABP from others. On or about October 19, 1981, SD Leasing purchased these video units from All American; on this same date, Rice, on ABP's behalf and as its guarantor, signed seven leases with SD Leasing as lessor, covering the same seven video units named in the earlier leases with PAC. The All American representative, who had presented the credit and lease documents to Rice for signature caused the documents to be mailed to SD Leasing in Arkansas. SD Leasing approved and accepted the leases on November 1, 1981. Soon thereafter, SD Leasing called ABP to verify the leases, and on November 18, 1981, mailed ABP a copy of each lease with a corresponding payment book.

Although Rice does not deny that he executed SD

---

controlling here, we deem it unnecessary to discuss *Meachum.* We do note, however, that Meachum was a Texas resident who had no contacts with Arkansas, except he furnished the Arkansas bank a financial statement and lease-guarantee involving a lease between two Arkansas corporations. This court found that due process requirements were met, and the Arkansas court had jurisdiction over Meachum.

[2]The record is unclear concerning the relationship between All American and PAC. Nevertheless, PAC claims no interest in or title to the video units.

Leasing's leases, he testified that he had not read these documents and was unaware that SD Leasing was involved in these rental transactions. ABP made only three payments which were all payable to All American. These payments were appropriately credited when SD Leasing purchased All American's interests in the ABP leases. ABP's last payment was made in December, 1981, after which ABP defaulted. Rice claims he first became aware of SD Leasing's interest in the video units when ABP requested All American to take back the units.

On May 24, 1982, SD Leasing filed suit against ABP and Rice, as ABP's guarantor, seeking rental payments due under the terms of the seven leases. In its complaint, SD Leasing sought to establish jurisdiction and to obtain service upon ABP and Rice pursuant to Arkansas' long-arm statute, Ark. Stat. Ann. § 27-2502 (Repl. 1979). ABP and Rice responded by filing separate motions to quash summons alleging the Arkansas court had no jurisdiction over them. The trial court overruled both motions. At a jury trial held on March 8, 1984, SD Leasing obtained judgment against Rice for $15,269.86.[3]

SD Leasing submits the Supreme Court's case of *SD Leasing* v. *Al Spain and Associates, Inc., supra,* is dispositive of the jurisdiction issue here, and we agree. Rice attempts to factually distinguish the *Spain* case, but the transactions related there are virtually identical to the ones here. First, Rice points out that Al Spain and Associates, Inc., had mailed some payments to SD Leasing before Spain defaulted on the lease. Here he points out that ABP mailed no payments to SD Leasing. We find little merit in this distinction because regardless of actual payments made, both Spain and ABP were required under their respective leases to forward rental payments to SD Leasing. Here ABP merely quit making its payments earlier than did Spain.

Second, Rice argues that Spain had mailed two memos to inform SD Leasing that Spain was going out of business. We simply fail to see how the mailing of memos to SD

---

[3]ABP was placed in bankruptcy in February, 1983.

Leasing concerning ABP's anticipated breach adds much to distinguish this cause from *Spain*. While it mailed no memos to SD Leasing, ABP was contacted on several occasions either by SD Leasing or All American after ABP defaulted. Besides, the *Spain* court placed its emphasis on two other factors which are also existent here: (1) The lease(s) specifically provided that the lease(s) shall be governed by and construed under the laws of the State of Arkansas; and (2) the parties' agreement contained a provision in which the lessee Spain consented to the jurisdiction of the Arkansas courts to enforce the lease terms. The *Spain* court determined that these contract provisions were fair and reasonable, and upheld their enforceability. From our review of the record, we find nothing that significantly distinguishes this case from the *Spain* holding. Thus, because we believe the *Spain* decision supports the trial court's ruling that it had jurisdiction over appellant, we affirm.

Affirmed.

CRACRAFT, C.J., and CORBIN, J., agree.