Walter C. BECKWITH

v.

INTERNATIONAL MILL SERVICES, INC., et al.

Frank J. VALENTI

v.

INTERNATIONAL MILL SERVICES, INC., et al.

Jay C. BUMPERS

v.

INTERNATIONAL MILL SERVICES, INC., et al.

Civ. A. Nos. 84–1083, 84–1218 and 84–1219.

United States District Court, E.D. Pennsylvania.

April 8, 1985.

George P. Wood, Norristown, Pa., for plaintiff.

Harry Shargel, Philadelphia, Pa., for defendants.

### MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before the court is a summary judgment motion filed by the defendants. This matter involves three related age discrimination suits filed by the plaintiffs. Their complaints aver a pattern and practice of discrimination against employees in the protected age group of forty (40) to seventy (70) years old. The plaintiffs filed a seven count amended complaint but have agreed to voluntarily dismiss four of the counts.[1] The remaining counts are the

subject of defendants' motion. The plaintiffs originally filed separate actions against the three defendants, but because the cases presented common issues of fact and law, I ordered their consolidation in the interest of promoting judicial efficiency. See *Valenti v. International Mill Service, Inc., et al.,* No. 84–1218, slip op., September 28, 1984.

### FACTS

Messrs. Bumpers and Beckwith were employed by the Clarence A. Hackett Corporation (Hackett) beginning in 1954 and 1959 respectively. Hackett was a wholly owned subsidiary of International Mill Services, Inc. (IMS) until 1984 when Hackett merged into IMS. IMS is a wholly owned subsidiary of IU International Corporation (IU). Neither Bumpers or Beckwith worked for the parent corporation, IU. Mr. Valenti was employed by IMS beginning in 1963 and continued there until his termination. Count I of the complaint states alleged violations of Section 4(A) of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* (ADEA). Count II maintains defendants violated the Pennsylvania Human Relations Act (PHRA).[2] Count III alleges violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 (ERISA). This summary judgment motion goes to all of the remaining counts.

### DISCUSSION

The purpose of a summary judgment motion is to test the merits of the action and determine prior to trial whether the parties have a basis for relief or defense. It is axiomatic that such a motion is not a substitute for trial and if the record, when examined in the light most favorable to the non-moving party, shows any materials facts or inferences that are in dispute, the motion should be denied. Fed.R.Civ.P. 56(a). *Tomalewski v. State Farm Life Insurance Co.,* 494 F.2d 882, 883, 884 (1974). It is with this understanding that the court begins its discussion of defendants' motion.

---

1. Counts IV, V, VI, VII.

2. Summary judgment as to Count II was granted in favor of defendants and against Jay C.

Bumpers, *Bumpers v. International Mill Service, Inc., et al.,* 595 F.Supp. 166 (1984).

A. Is IU as a parent corporation an "employer", subject to the liability of its subsidiary, within the meaning of 29 U.S.C. § 630(b)?

Section 630(b) defines employer as "[a] person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ... The term also means (1) any agent of such a person ..." The plaintiffs did not work directly for IU, thus, the parent corporation can only be defined as an employer if its subsidiary acted as its "agent" under Section 630(b)(1). Agency connotes a master's control over the servant[3] and thus the inquiry must be focused upon whether some nexus exists between the parent IU and the subsidiary IMS to indicate that IMS is not an independent enterprise, but rather totally under the control and domination of IU. Courts have generally applied one of three tests to determine the extent a parent has assumed control over a subsidiary. They are (1) the integrated enterprise test; (2) the alter ego test; and (3) the mere instrumentality test. *See Berkowitz v. Allied Stores of Penn-Ohio, Inc.*, 541 F.Supp. 1209, 1214 (E.D.Pa.1982). The integrated enterprise test has been specifically applied to ADEA cases. It is directed towards determining whether nominally separate corporations should be considered a single employer.[4] To ascertain if the corporations function as one integrated enterprise, the court assesses the interrelations of the operations, the common management, centralized control of labor relations and common ownership or financial control existing between the parent and the subsidiary. *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Services of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965).[5]

Plaintiffs have deposed both the President of IMS and the Executive Vice President of IU (who is also the Chairman of the Board of IMS). The depositions of the senior management structure of the parent and the subsidiary does not establish that the two corporations function as one integrated enterprise. First, IMS is but one of over one hundred (100) subsidiaries that are owned by the parent corporation. The IMS operation employs over 30,000 full time personnel while IU's headquarters operates with but a few hundred. There is no evidence to show that the labor force or the management of these two concerns are interrelated. The fact that the Executive Vice President of the parent corporation is also the Chairman of the Board for IMS is not enough to show that the IMS management structure is integrated into IU Corporation. The depositions of the senior management personnel of these two companies did not reveal that IU managers dictate the manner and method of IMS operations. There are regularly scheduled meetings between the two companies to review business results, plans, and objectives but no evidence has been produced to show that IMS management acts to rubber stamp the objectives of its parent corporation. It appears to the court

---

3. *See Smalich v. Westfall,* 440 Pa. 409, 269 A.2d 476 (1970).

4. The alter-ego and the mere instrumentality test are not appropriate under these facts. The alter-ego test is derived from *Zubik v. Zubik,* 384 F.2d 267 (3d Cir.1967) where it was held that a court may disregard a parent corporation's existence when its subsidiary is its alter ego and where it is necessary to do so in order to prevent fraud, illegality or injustice. The mere instrumentality test is used when the parent controls a subsidiary to such a degree that it is but a mere instrumentality of the parent; and the parent is perpetuating a wrong through the subsidiary; and an unjust result will occur if the

parent is allowed to be shielded by its separate corporate existence. *Fanfan v. Berwind Corporation,* 362 F.Supp. 793, 795 (E.D.Pa.1973).

5. This standard was first applied in labor cases and was later adopted in cases involving Title VII of the Civil Rights Act of 1964. *See Williams v. New Orleans Steamship Association,* 341 F.Supp. 613, 615 (E.D.La.1972). The Supreme Court has held that ADEA and Title VII should be construed in similar fashion in view of their common statutory language and purpose, *Oscar Meyer and Co. v. Evans,* 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979), hence the application of these factors to the case at hand.

that the subsidiary develops its own operating budget independent of IU. IU has authority to approve or reject it, but this fact is not enough to label IMS as a puppet organization whose every movement is controlled by the puppet master, IU. The depositions also revealed that IU's management was not involved with the decision to terminate these three employees. Simply stated, there is no evidence to suggest either IU's involvement in the termination or an inference of involvement through the integrated enterprise theory.

The ADEA does not impose liability upon the parent corporation merely because the termination decision of their subsidiary may have been illegal. The burden rests upon the plaintiff to show IMS is not independent of IU. Plaintiffs have failed to meet that burden, therefore, the parent corporation's motion for summary judgment as to Count I of the amended complaint will be granted.

B. Plaintiffs Valenti and Beckwith may not maintain an action against the defendants under the Pennsylvania Human Relations Act.

■ The above named plaintiffs did not file charges with the commission within the statutorily mandated time period of ninety (90) days from the date of the alleged discriminatory act. Their claims under PHRA are barred and the defendants' motion on this issue will be granted.

C. Are there facts to support a claim under 29 U.S.C. § 1140?

■ Section 1140 of ERISA makes its unlawful for an employer to terminate a worker for the purpose of interfering with the attainment of pension benefits. The burden is upon the plaintiffs to establish this motive.

Plaintiffs have stated during their depositions that they have no proof other than their own beliefs that they were terminated to save money *vis-a-vis* the vesting of their pension benefits. The plaintiffs can only show that had they continued in their employment they would have received a greater pension benefit. It does not automatically follow that the motive for their termination was to prevent them from receiving greater retirement benefits. Since plaintiffs have been unable to come forward with any evidence to support this cause of action, the court will grant summary judgment for the defendants on Count III of the amended complaint. By disposing of these remaining motions, the issue has been narrowed to focus upon whether the two remaining defendants, IMS and Hackett, based the decision to terminate the plaintiffs on age. The parties shall proceed to trial on this issue. Additionally, the defendants have filed a motion to strike the demand for a jury trial contending that they have no right to a jury trial in an action brought under ERISA (Count III). Since summary judgment as to the ERISA count will be granted in favor of the defendants, this motion to strike is rendered moot. An appropriate order follows.