**Edward L. BYER, Plaintiff,**

v.

**GORDOS ARKANSAS, INC., Gil Yanishevsky, President of Gordos Arkansas, Inc., Flint Industries, Inc., and P.K. Lackey, President of Flint Industries, Inc., Defendants.**

**Civ. No. 88–5055.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

April 20, 1989.

Nancy L. Hamm, Niblock Law Firm, Fayetteville, Ark., for plaintiff.

David E. Strecker, Conner & Winters, Tulsa, Okl., and Wm. Jackson Butt, II, Davis, Cox & Wright, Fayetteville, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, Edward Byer, initiated this action on April 28, 1988, under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, against defendants, Gordos Arkansas, Inc., Gil Yanishevsky, Flint Industries, Inc., and P.K. Lackey. Defendants Yanishevsky and Lackey are named as defendants in their capacities as president of Gordos Arkansas, Inc., and Flint Industries, Inc., respectively. Essentially plaintiff contends that he was denied a promotion and terminated from employment on the basis of his age.

On May 19, 1988, defendants filed a combined motion to dismiss pursuant to Rule 12(b)(6) Fed.R.Civ.P. Defendant, Lackey, further moved to dismiss plaintiff's complaint on the grounds that he was not properly served with process and on the asserted basis that this court lacks personal jurisdiction over him. After plaintiff amended his complaint, defendant, Flint, moved to dismiss pursuant to Rule 12(b)(1), arguing that, because Flint lacked the requisite number of employees during the relevant periods of time, this court lacks subject matter jurisdiction of plaintiff's claim against it.

Defendants thereafter filed a "Combined Supplemental Brief in Support of Their Motions to Dismiss" in which defendants contended that plaintiff did not file a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Defendants, Yanishevsky, Lackey, and Flint, additionally asserted that they should be dismissed from this action because they were not named in plaintiff's charge of discrimination. This argument is divided into three sub-parts: (1) there is not "substantial identity" between Gordos Ar-

kansas and defendants, Yanishevsky, Lackey, and Flint; (2) there is no evidence that Gordos Arkansas was the agent of any of these defendants; and (3) these defendants had no notice of plaintiff's discrimination claim and had no opportunity to conciliate.

Defendants, Flint and Lackey further posit that, because Flint and Gordos Arkansas have a "normal" parent-subsidiary relationship and because there is no evidence linking Flint or Lackey to the employment decisions which affected the plaintiff, neither Flint nor Lackey may be held liable.

Plaintiff responded to Flint's motion based on the subject-matter jurisdiction of this court by arguing that Flint may be "consolidated" with related corporate entities for purposes of determining the existence of the requisite number of employees under the ADEA, citing *Baker v. Stuart Broadcasting Company*, 560 F.2d 389 (8th Cir.1977). Similarly, plaintiff asserts that, if Flint and Gordos Arkansas are an "integrated enterprise", then Flint is "bound" by plaintiff's naming of Gordos Arkansas in his EEOC charge.

Plaintiff replied to defendants' "timeliness" argument by pointing out that defendants erroneously relied upon the date upon which they were notified of plaintiff's EEOC charge rather than the actual date of filing. With regard to Lackey's contention that this court lacks personal jurisdiction over him, plaintiff noted the existence of various facts which indicate that Lackey may have engaged in a persistent course of conduct in regard to the plaintiff and Gordos Arkansas sufficient to render him subject to the personal jurisdiction of this court.

By letter dated October 19, 1988, the court notified the parties that the pending motions, other than Lackey's motion under Rule 12(b)(5), would be regarded as motions pursuant to Rule 56, and the parties were given additional time in which to submit materials in support of their respective positions. This court subsequently denied Lackey's Rule 12(b)(5) motion [1] and denied defendants' motions regarding the timeliness of plaintiff's EEOC charge. The remaining issues were reserved for later determination pending additional discovery. That discovery has now been completed and the issues are ripe for decision.

### Subject Matter Jurisdiction of Plaintiff's Claim Against Flint

As indicated above, Flint contends that it is not subject to the ADEA because it did not have 20 or more employees for 20 or more calendar weeks during 1985, 1986, or 1987. See 29 U.S.C. § 630(b). The documents submitted by Flint reflect that Flint did not have 20 or more employees for 20 or more calendar weeks in these years. The name of George Marchev appears on the payroll registers, and does appear to constitute the "20th employee" during some time periods. However, Anne Li's affidavit explains that the payments to Mr. Marchev constituted payments in lieu of damages pursuant to a clause in Mr. Marchev's contract and that Mr. Marchev was not, during those periods, an employee.

Various other person's names disappear and reappear in the payroll records, namely George Davis, P.K. Lackey, and David Dearing. Ms. Li's affidavit indicates that Davis' name appeared after his retirement only during the month he was paid his retirement bonus. The names of Lackey and Dearing disappeared during those

---

**1.** See *Young v. Mt. Hawley Insur. Co.*, 864 F.2d 81 (8th Cir.1988). The Eighth Circuit, in that case, relied upon *Combs v. Nick Garin Trucking*, 825 F.2d 437 (D.C.Cir.1987) for the proposition that "if plaintiff elects to utilize federal mail service rule and defendant does not return acknowledgment within designated period, the mailing cannot stand as effective service of process simply by treating it as made in accordance with a state-law method...."

This court reiterates its previous analysis. There is no reason for this court to view service of the summons and complaint upon Lackey by certified mail, return receipt requested, which is clearly valid service under state law, as invalid simply because a federal acknowledgment form was also included. *See also Morse v. Elmira Country Club*, 752 F.2d 35 (2nd Cir.1984). The result would be different if the first mailing was invalid under state law.

In any event the court is advised that Lackey has subsequently been personally served with process.

times in which their compensation was deferred.

From the foregoing, it is clear that Flint can be subject to the ADEA only if it is an "integrated enterprise" with a related corporation. The governing Eighth Circuit test set forth in *Baker, supra,* involves four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.

The affidavits of Lackey and Yanishevsky reflect that Flint is the majority stockholder in seven different corporations. Some of these corporations are majority shareholders in other corporations. According to these affidavits, there is no sharing of operational equipment, assets, personnel, decision-making, purchasing, risk management, or loss control. Flint sells, at fair market value, some data processing services to its subsidiaries.

To be contrasted with these relatively conclusory statements, are the facts that, as plaintiff points out, via affidavit, Flint owns 94% of Gordos International Corporation (GIC) which owns 100% of Gordos Corporation (GC) which owns 87.7% of Gordos Arkansas, plaintiff's immediate employer. Of Flint's four officers as of December 15, 1986, and four existing officers, three also held an office on one or more of GIC, GC and/or Gordos Arkansas. Of Flint's nine directors as of December 15, 1986, and nine existing directors, four also serve as directors of one or more of GIC, GC and/or Gordos Arkansas. Defendant Yanishevsky served as President of Gordos Arkansas and President of GC, Advisory Director of GIC, Director of GC and Director of Gordos Arkansas. Defendant Lackey served as Vice President of Gordos Arkansas, President of Flint, President of GIC, Vice President of GC, Director of Flint, Regular Director of GIC, Director of GC, and Director of Gordos Arkansas. D.A. Dearing served as Treasurer/Assistant Secretary of Gordos Arkansas, Controller/Secretary/Treasurer of Flint, Treasurer/Assistant Secretary of GIC, and Treasurer/Assistant Secretary of GC. Gordos Arkansas' other director prior to December 15, 1986,

was G.R. Seay, who held the following positions—Director of Gordos Arkansas, Vice–Chairman of the Board of Directors of Flint, and Regular Director of GIC.

The affidavit of David Schumacher, former cost accountant and controller employed at Gordos Arkansas, indicates that Gordos Arkansas and Flint maintained a zero-balance checking relationship. The Gordos Arkansas account was established with the First National Bank of Tulsa as part of a series of Flint-related accounts. Checks drawn on the Gordos account were honored by funds in the Flint master account on a daily basis. Gordos cash was received into a lock box account with the Bank of New York. Carolyn Girdner of Flint was notified on a daily basis of amounts in the Bank of New York account. Flint then transferred these funds directly into its account in Tulsa. Carolyn Girdner was notified of the amount of all checks written by Gordos Arkansas. David Dearing, Controller of Flint, and Lackey, President of Flint, were authorized signatories on all Gordos Arkansas bank accounts. Ann Li of Flint conducted the plaintiff's exit interview when plaintiff ended his employment with Gordos Arkansas. Ms. Li selected the bank and administrator for Gordos Arkansas' 401K plan. All of Gordos Arkansas' tax filings were prepared and submitted by Flint. All monies expended by Gordos Arkansas were provided directly by Flint. According to Mr. Schumacher, David Dearing (Flint Controller) told him that plaintiff was not selected for promotion because "we were not sure how long Ed would be around."

The affidavit of Karen Lugeanbeal, former personnel director at Gordos Arkansas, demonstrates that Flint completely controlled Gordos Arkansas' benefit plans regardless of the wishes of the employees of Gordos Arkansas or the relative cost-effectiveness of the plans. Employees of Gordos Arkansas drawing long-term disability received disability checks from Flint, written on Flint's accounts. Workers' Compensation claims were largely controlled by Flint. All requests by Gordos Arkansas employees pertaining to the 401K plan had to be made to Flint. Ms. Li of

Flint was to be notified of any accidents, claims, or lawsuits involving Gordos Arkansas. Plaintiff's EEOC claim was "handled" to some degree by Ms. Li at Flint.

In response to the information set forth in the preceding materials, which appear to describe a rather intricate labyrinthine involvement in the financial and operational affairs of Gordos Arkansas by Flint, counsel for Flint suggests that they should be given "little weight." However, even if the court were to disregard those portions of the affidavits of Mr. Schumacher and Ms. Lugeanbeal which may not have been based upon personal knowledge, and taking into account that defendants have not had an opportunity to cross-examine these persons, the court nonetheless is convinced that a factual issue is presented with regard to the interrelation of operations and common management. *See Baker, supra; EEOC v. Financial Assurance, Inc.,* 624 F.Supp. 686 (W.D.Mo.1985).

Flint argues that the "overlap" of officers is minimal and largely due to administrative and geographic convenience. Although a minor administrative overlap will not, *per se,* establish common management for purposes of the "integrated enterprise" test, *see Webb v. American Red Cross,* 652 F.Supp. 917 (D.Neb.1986); *Beckwith v. Int'l Mill Services,* 617 F.Supp. 187 (E.D.Pa. 1985), plaintiff has certainly established a *prima facie* case that Flint and Gordos Arkansas were an integrated enterprise for jurisdictional purposes. The affidavits on file reflect some degree of centralized control of labor relations between the two companies and significant financial control by Flint over the affairs of Gordos Arkansas. Although several of the "facts" relevant or crucial to the court's analysis are "hotly" disputed by Flint, the court cannot simply decide that all of Flint's witnesses are truthful and accurate and all of plaintiff's are dishonest or mistaken. If plaintiff's witnesses are correct, then quite clearly Flint and Gordos Arkansas are "integrated" to some degree.

The deposition of defendant, Yanishevsky, President of Gordos Arkansas, and Gordos Corporation (GC) indicates that he "thinks" he was paid a salary by GC but not Gordos Arkansas. He was unaware of the bank used by Gordos Arkansas and he did not know whether Gordos Arkansas had a petty cash account in Rogers, Arkansas, where its local office is located. He was not a signatory on the accounts and he had no idea how money was deposited into the payroll account. In fact, Mr. Yanishevsky's lack of knowledge of the structure and operation of Gordos Arkansas is astounding, particularly for a corporate president. By contrast, defendant, Lackey, President of Flint, demonstrated a vast and comprehensive knowledge of the intricacies of the daily operation of Gordos Arkansas and Flint's other subsidiaries.

Although the evidence is conflicting, the court finds sufficient support in the record for the proposition that Flint and Gordos Arkansas are an "integrated enterprise" to deny Flint's motion for summary judgment. It is undisputed that Gordos Arkansas is subject to the provisions of the ADEA. Therefore, for purposes of Flint's summary judgment motion, Flint is likewise subject to the ADEA. *See Kamens v. Summit Stainless, Inc.,* 586 F.Supp. 324 (E.D.Pa. 1984); *Bernstein v. Consol. Foods Corp.,* 622 F.Supp. 1096 (N.D.Ill.1984).

*Flint's Motion for Summary Judgment On the Basis that It Was Not Named In Plaintiff's Charge of Discrimination*

As the court has indicated in previous correspondence with the parties, the resolution of the "integrated enterprise" issue "goes a long way" toward the resolution of the issue as to whether it was necessary for the plaintiff to specifically name Flint in his EEOC charge.

■ It is clear that, although the naming of a party in EEOC proceedings is ordinarily necessary, it is not a jurisdictional prerequisite. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed. 2d 234 (1982). Where an unnamed party is provided with adequate notice of the charge and has an opportunity to participate in conciliation proceedings, the charge is sufficient to confer jurisdiction over that

**154**

party. *See Eggleston v. Chicago Journey-men Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir.1981); *Bernstein, supra.*

There are sufficient facts in the record to create a material issue as to the extent that Flint influenced or controlled the operations and employment policies of Gordos Arkansas during the relevant periods and whether it had actual knowledge of plaintiff's claim and an opportunity to conciliate. Accordingly, Flint's motion for summary judgment on the basis that it was not named in plaintiff's EEOC charge will be denied.

*Lackey's Contention that This Court Lacks Personal Jurisdiction Over Him*

■ 29 U.S.C. § 630(b) defines the term "employer" as used in the ADEA as including "a person ... who has twenty or more employees ... in each of twenty or more calendar weeks...." That section further provides that the term "employer" "also means "(1) any agent of such a person...." This provision includes "agents" of corporations, whether the agent is corporate or individual, and includes "officials" of "employers." *See Wasilchuk v. Harvey's Wagon Wheel, Inc.*, 610 F.Supp. 206 (D.Nev.1985); *Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715 (E.D.N.Y.1978). Thus, if Lackey was an agent of Flint/Gordos Arkansas, he is subject to suit under the ADEA as an "employer."

Lackey argues that he lacks sufficient contacts with the State of Arkansas to justify this court's exercise of personal jurisdiction over him, relying upon the "fiduciary shield" doctrine. There is a great deal of confusion as to what the "fiduciary shield" doctrine is. In many purported "fiduciary shield" decisions the agent has been exonerated from liability because of the absence of any in-state contacts of the agent with the alleged tort. These decisions purportedly rest on the lack of long-arm or extraterritorial jurisdiction.

Other "fiduciary shield" decisions construe the doctrine as granting immunity to an officer or agent of a corporation who takes no part in the commission of a tort committed by a corporation. The latter

expression of the rule is a substantive rule of law while the former is founded upon a jurisdictional analysis. This dichotomy was discussed in *Columbia Briargate Company v. First National Bank*, 713 F.2d 1052 (4th Cir.1983). The Fourth Circuit resolved the tension between the substantive and jurisdictional rules and concluded:

[S]o long as the agent has not participated in the alleged tort in the forum state, he is immune from suit on such tort both under general corporate law and under the state long-arm statute but if he has a 'direct personal involvement' in a tort committed in the forum state, the agent is subject to jurisdiction in that state under it's long-arm statute.

\* \* \* \* \* \*

[W]e are persuaded that when a non-resident corporate agent is sued for a tort committed by him in which service is made upon him without the forum ... he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process. On the other hand, if the claim against the corporate agent rests on nothing more than that he is an officer or employee and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally.

In *Garber v. Jack's Corn Crib*, No. 4-86-740, slip op., 1988 WL 74280 (D.Minn. July 18, 1988), 1988 U.S. Dist. Lexis 7168, the court reviewed the law of various jurisdictions, as well as jurisdictional decisions of the Eighth Circuit Court of Appeals and the Supreme Court. The *Garber* court indicated that the traditional rule was that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his individual capacity. *See Ark. Rice Growers v. Alchemy Industries, Inc.*, 797 F.2d 565 (8th Cir.1986). However, the *Garber* court held that the traditional rule

"must be viewed through the lens of recent Supreme Court decisions in which the Supreme Court emphatically rejected the notion of automatic jurisdictional immunity for corporate officers," referring to *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984).

In *Hustler Magazine*, the Supreme Court said:

It does not follow from the fact that jurisdiction may be asserted over Hustler Magazine, Inc., that jurisdiction may also be asserted over either of the other (individual) defendants. In *Calder v. Jones* ... we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.... Each defendant's contacts with the forums state must be assessed individually....

Thus, a constitutional due process analysis properly disregards the fiduciary shield doctrine entirely, and if such shield continues to exist at all, it must do so by virtue of state substantive tort law or state-imposed limitations of extra-territorial judicial jurisdiction short of the fullest extent allowed by due process.

Defendant, Lackey's, deposition reflects that he has attended board meetings at the Gordos Arkansas facility. He was a party to several telephone conversations per month with defendant, Yanishevsky, regarding the "strategic direction" of the corporation. Lackey approved salary changes for Arkansas personnel on behalf of the compensation committee. He regularly received and reviewed monthly financial statements from Gordos Arkansas, as well as weekly sales reports. As a matter of "courtesy," the termination of officers of any of Flint's subordinate or subsidiary companies was discussed with Mr. Lackey prior to implementation. If the selection of a new president of Gordos Arkansas became necessary, Mr. Lackey would have

been the person responsible for conducting the interview. The same holds true for subordinate officers of Gordos Arkansas. From Mr. Lackey's deposition testimony, he may have been a signatory on the bank accounts of Gordos Arkansas.

With regard to the plaintiff's employment, Mr. Lackey, as a member of the compensation committee, approved his salary. As president of Flint, Mr. Lackey approved a written policy pertaining to severance pay of the "key employees" of Gordos Arkansas. Lackey attended the directors' meeting at the Gordos Arkansas facility on August 5, 1986.

If a loan were necessary to cover payroll for Gordos Arkansas, Mr. Lackey would have been the individual who would approve the loan. This has been required from time to time. Lackey gave advice to Yanishevsky with regard to strategic planning and policy-type matters. Lackey indicated that Yanishevsky, as president of Gordos Arkansas, had discussed with him problems that arose with regard to officers of Gordos Arkansas. Lackey personally rejected plaintiff's offer to settle this litigation.

The foregoing contacts of defendant, Lackey, with the State of Arkansas are illustrative but not exhaustive of those asserted by the plaintiff. The question is whether these contacts are sufficient under the due process clause and Arkansas' long-arm statute, Ark.Code Ann. § 16–4–101, to render Lackey subject to the jurisdiction of this court.

Although writers and authorities have disagreed from time to time, it is now generally accepted that Arkansas' long-arm statute extends the state's jurisdiction over nonresidents to the limits permitted by the due process clause. *See Dudley v. Dittmer*, 795 F.2d 669 (8th Cir.1986); *Meachum v. Worthen Bank*, 13 Ark.App. 229, 682 S.W.2d 763 (1985); *Jagitsch v. Commander Aviation Corp.*, 9 Ark.App. 159, 655 S.W.2d 468 (1983).

Having considered the totality of the evidence pertinent to this point, the court concludes that this court may constitutionally exercise jurisdiction over defendant, Lack-

ey. Facts militating in favor of this conclusion include plaintiff's assertion that Lackey in fact exercised substantial control over the plaintiff's position with Gordos Arkansas. According to the plaintiff, Lackey was actively involved in the relocation and consolidation of GC to the Gordos Arkansas facility and sent consultants to Arkansas to evaluate the relocation. Lackey was active in reviewing and promoting the management bonus program for the plaintiff and the plaintiff's staff. Lackey was active in interviewing prospective employees and officers of Gordos Arkansas and attended several board meetings in Arkansas and provided advice concerning the strategy and planning of Gordos Arkansas. Lackey notified the plaintiff by telephone of Yanishevsky's appointment as president, and explained why plaintiff was not so promoted. Lackey had significant input regarding plaintiff's salary and the elimination of plaintiff's position. Despite Lackey's protestations, it appears that he was a primary force behind the actions of Gordos Arkansas and oversaw its operations. From the evidence available to the court, it is doubtful that plaintiff would have been terminated had Lackey steadfastly opposed it.

Lackey's relationship with Arkansas was purposeful, not "random," "fortuitous" or "attenuated." *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Lackey clearly availed himself of the privilege of conducting activities in Arkansas which affected Arkansas residents. Although it is, admittedly, a "close question" the court concludes that subjecting Lackey to suit in Arkansas would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Accordingly, Lackey's motion pursuant to Rule 12(b)(2) will be denied.

Lackey has styled his motion as one testing only the jurisdiction of this court. Lackey does not appear to argue that the substantive law governing this claim renders him immune from liability solely because his actions were taken in his various capacities as a corporate officer. Thus, the court's analysis should not be construed as indicating its views as to Lackey's liability to the plaintiff, if any.

A separate order effectuating the foregoing will be concurrently entered.