Present:  All the Justices

COMMONWEALTH TRANSPORTATION COMMISSIONER
                                                OPINION BY
v.  Record No. 960433          CHIEF JUSTICE HARRY L. CARRICO
                                            January 10, 1997
JAMES E. MATYIKO, ET AL.

        FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                   Herbert C. Gill, Jr., Judge

                     Trial Court Proceedings

        In the aftermath of a condemnation proceeding, the Commonwealth Transportation Commissioner (the Commissioner) filed in the court below a motion for judgment against James E. Matyiko, John Matyiko, Jr., and Jerry B. Matyiko (the defendants), alleging that they were former directors of Matyiko Investment Corp. (the Corporation), which had been dissolved, and that they were jointly and severally liable for an unlawful distribution of assets under Code § 13.1-692.[1]  The Commissioner sought recovery of $137,965, representing the excess resulting when commissioners in the condemnation proceeding awarded less than the amount previously paid the Corporation pursuant to a certificate of take.

        In a bench trial, the trial court entered judgment in favor of the defendants.  We awarded the Commissioner this appeal.

                        Factual Background

        [1]Code § 13.1-692 provides in pertinent part as follows:

        **Liability for unlawful distribution.** -- A.  Unless he complies with the applicable standards of conduct described in § 13.1-690, a director who votes for or assents to a distribution made in violation of this chapter . . . is personally liable to the corporation and its creditors for the amount of the distribution that exceeds what could have been distributed without violating this chapter . . . .

In 1985, the Corporation, which was closely held, owned a 99.52-acre tract of land in Chesterfield County, constituting the Corporation's only asset. On February 13, 1985, William S. Lee, right-of-way agent for the Department of Highways and Transportation, offered the Corporation $327,140 for an 8.05-acre parcel needed for highway construction, including $221,375 as the value of the needed land and $105,765 as damages to the 91.47-acre residue.

The Corporation rejected the Highway Department's offer. On March 28, 1985, the Commissioner filed a certificate of take in the Clerk's Office of the Circuit Court of Chesterfield County, certifying that the amount of $327,140 was estimated to be the fair value of the 8.05-acre parcel taken plus damages to the residue and that this amount would be paid by the Treasurer of Virginia pursuant to the order of the court.

On April 15, 1985, the Corporation entered into a contract with the Midlothian Company for the sale and purchase of the 99.52-acre tract, less that portion covered by the Commissioner's certificate of take, for a price of $32,000 per acre. On April 19, 1985, the Corporation's directors and stockholders voted to dissolve the Corporation and distribute all its assets. The Corporation directed its counsel, N. Leslie Saunders, Jr., to file a statement of intent to dissolve the Corporation with the State Corporation Commission, in accordance with the provisions of Code § 13.1-81.[2] Prepared by a member of Saunders' law firm, the

_____

[2]Code § 13.1-81 has since been repealed. See present Code § 13.1-743 (1993 Repl. Vol.), which requires the filing of articles of dissolution.

statement of intent to dissolve was filed on June 4, 1985. It listed Joseph G. Matyiko, Sr., James E. Matyiko, John Matyiko, Jr., Jerry B. Matyiko, and Saunders as directors of the Corporation.

Some time prior to May 13, 1985, the Corporation filed a petition with the trial court for leave to draw down the sum of $327,140, set forth in the certificate of take as the estimated value of the 8.05-acre parcel and damages to the residue. An order was entered on May 13 directing payment of $327,140 to Saunders on behalf of the Corporation.

The check for the "drawdown" was issued to the Corporation on June 10, 1985. Shortly thereafter, the Corporation disbursed to its shareholders all its assets, including the proceeds of both the "drawdown" and the sale of the 91.47-acre residue. Joseph Matyiko held 45% of the Corporation's stock, James, John, and Jerry Matyiko each held 15%, and Saunders held 10%. In the disbursement, Joseph Matyiko received $1,376,869, James, John, and Jerry Matyiko each received $458,956, and Saunders received $305,970.

Saunders had received his stock in return for his agreement to represent the Corporation in matters involving the Corporation's land. Saunders and Richard Paul Pontynen (Pontynen), the Corporation's certified public accountant, recommended the dissolution in order to take advantage of § 337 of the Internal Revenue Code and avoid double taxation of the gain derived from sale of the Corporation's land. According to Pontynen's testimony, § 337(a) allows such tax avoidance

> [i]f within a 12 month period beginning on the date on which a corporation adopts a plan of complete liquidation, all of the assets of a corporation are distributed in complete liquidation, less assets to meet claims, then no gain or loss should be recognized from such corporation from sale of or exchange by it of property within such 12 month period.

In addition, Saunders expressed the opinion that there was "no chance of . . . getting less than the certificate in a condemnation case and . . . not . . . any risk in dissolving the Corporation." Saunders also opined that he "thought they were looking realistically at [$]400,000" as a condemnation award.

After the Corporation distributed its assets, Saunders continued to negotiate with Lee, the right-of-way agent for the Department of Highways, in an effort to settle the condemnation case. The amount initially offered by the Highway Department was based upon an appraisal of $27,500 per acre for the Corporation's land. When the Corporation contracted to sell the residue for $32,000 per acre, or $4,500 per acre more than the Department's initial appraisal, the Department took the position that the value of the Corporation's land had been enhanced by the highway project, rather than damaged. Accordingly, Lee advised Saunders that the Department was willing to offer no more than $350,000 to settle the case.

The $350,000 offer was rejected, and Saunders ceased representing the Corporation. With different counsel representing the Corporation, the condemnation case went to trial before commissioners in March 1993, resulting in an award of $189,175, or $23,500 per acre, with no damages to the residue.

By order dated March 10, 1994, the trial court confirmed the

condemnation commissioners' report and also entered judgment in favor of the Commissioner against the Corporation in the amount of $137,965, plus interest, representing the excess of the amount previously drawn down by the Corporation over the amount of the condemnation award.  In the meantime, the Corporation had been terminated by order of the State Corporation Commission entered April 15, 1986, and, therefore, there were no corporate assets remaining to satisfy the judgment.  The Commissioner then filed the present motion for judgment against James, John, and Jerry Matyiko seeking to have them held personally liable for the amount of the excess.[3]

### Applicable Statutory Provisions

As noted earlier, Code § 13.1-692(A) provides that "[u]nless he complies with the applicable standards of conduct described in § 13.1-690, a director who votes for or assents to a distribution made in violation of [Chapter 9 of Title 13 of the Code] is personally liable to the corporation <u>and its creditors</u> for the amount of the distribution that exceeds what could have been distributed without violating [Chapter 9]."  (Emphasis added.) Under Code § 13.1-653, a violation of Chapter 9 may occur if, as a result of distributions made to shareholders, the corporation

---

[3]As noted previously in the text, the Corporation's statement of intent to dissolve listed Joseph Matyiko, James Matyiko, John Matyiko, Jerry Matyiko, and Leslie Saunders as directors.  However, Joseph Matyiko and Saunders were not named as defendants to the motion for judgment in which the Commissioner sought to recover the excess amount paid the Corporation in the "drawdown" order.  We are told in the Commissioner's brief that Joseph Matyiko filed for bankruptcy and received a discharge with respect to the Commissioner's claim against him.

"would not be able to pay its debts as they become due," Code § 13.1-653(C)(1), or its "total assets would be less than the sum of its total liabilities," Code § 13.1-653(C)(2).

However, because Code § 13.1-692(A) conditions its imposition of personal liability upon a director's failure to comply with the standards of conduct described in Code § 13.1-690, a "safe harbor" is provided to a director who does comply with those standards. See Curley v. Dahlgren Chrysler-Plymouth Dodge, Inc., 245 Va. 429, 433, 429 S.E.2d 221, 223 (1993). Code § 13.1-690, embodying Virginia's "Business Judgment Rule," provides in pertinent part as follows:

A. A director shall discharge his duties as a director . . . in accordance with his good faith business judgment of the best interests of the corporation.

B. Unless he has knowledge or information concerning the matter in question that makes reliance unwarranted, a director is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, if prepared or presented by:

. . . ;

2. Legal counsel, public accountants, or other persons as to matters the director believes, in good faith, are within the person's professional or expert competence;

. . . .

C. A director is not liable for any action taken as a director, or any failure to take any action, if he performed the duties of his office in compliance with this section.

D. A person alleging a violation of this section has the burden of proving the violation.

## Discussion

In finding for the defendants, the trial court reviewed the

evidence and applicable statutory provisions and stated in a letter opinion, as follows:

> Defendants obtained legal and accounting advice with regard to dissolution of the corporation. They acted in good faith upon the recommendations of an attorney skilled in corporate, real estate and condemnation matters and upon the recommendations of a certified public accountant skilled in taxation matters. Consequently, the Defendants are protected from liability for the debts of [the Corporation].

Quoting Quantum Development Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991), the defendants contend that a "'trial court's findings of fact are binding upon [this Court] unless they are plainly wrong or unsupported by the evidence.'" Here, the defendants maintain, "the trial court's findings of fact that the directors 'acted in good faith upon the recommendations of an attorney . . . and . . . a certified public accountant' . . . [are] clearly supported by the evidence."

However, we are of opinion that resolution of one of the assignments of error made by the Commissioner is dispositive as a matter of law of the question whether the defendants were entitled to rely upon the recommendations of the Corporation's attorney and accountant. That assignment states:

> The trial court erred by ruling that a corporation's directors, who made large cash distributions to themselves and to the corporation's attorney, were entitled to rely on professional advice to make those distributions even though the funds the corporation had received from [the Commissioner] were, by order of the court endorsed by the corporation's attorney, subject to being refunded to [the Commissioner] upon final resolution of the condemnation case.

With respect to this assignment of error, the Commissioner points to the following paragraph of the "drawdown" order:

> It is further ORDERED that in the event of an award

in a condemnation proceeding being of a lesser amount than that deposited with the Court, the State Highway and Transportation Commissioner of Virginia shall receive the amount of such excess, and if any person has been paid a greater sum than that to which it is entitled as determined by the award, judgment shall be entered for the State Highway and Transportation Commissioner against such person for the amount of such excess.

The wording of the order tracks the language of Code § 33.1-128, which provides, in pertinent part:

In the event of an award in a condemnation proceeding being of a lesser amount than that deposited with the court, the Commissioner shall recover the amount of such excess and, if any person has been paid a greater sum than that to which he is entitled as determined by the award, judgment shall be entered for the Commissioner against such person for the amount of such excess.

The Commissioner contends that "the directors of a corporation that receive condemnation proceeds pursuant to an order of court that the funds are being drawn down subject to the outcome of the condemnation proceeding [may not] rely on a professional's recommendation that the corporation distribute all of its assets even though the condemnation proceeding is still pending." The Commissioner argues that in this case the "drawdown" order placed the Corporation "on notice of the risks of receiving the drawdown money in advance of [the] trial on the matter," meaning "that if the condemnation award at trial is less than the amount drawn down, judgment will be entered against the landowner for the difference."

Yet, the Commissioner complains, "[t]he directors ignored the drawdown order's language admonishing [the Corporation] of the risk" and "distributed all of [the Corporation's] assets to themselves and their attorney." If directors can do "what these

directors have done," the Commissioner cautions, "the drawdown order is completely meaningless."

This argument brings into focus Code § 13.1-690(B), which, as noted previously, provides that a director is entitled to rely upon the recommendations of experts "[u]nless he has knowledge or information concerning the matter in question that makes reliance unwarranted." The defendants insist, however, that they "did not know . . . there was even a legal possibility of any payback liability to [the Commissioner]," that "they were not on notice of the possibility of a payback liability," that they "did not sign the drawdown order," and that their signatures appear "on no documents [reflecting] imputed knowledge of any payback liability."

But uncontradicted testimony at trial showed that the defendants had <u>actual</u> knowledge of the provisions of the "drawdown" order. During trial, the Commissioner's counsel asked Saunders what advice he had given the "Matyiko brothers sitting here about the drawdown," obviously referring to the present defendants. Saunders replied: "<u>We went over the drawdown, the drawdown order, what it said and so forth</u>." (Emphasis added.) While Saunders went on to express the opinion, as recited previously, that "there was no chance of . . . getting less than the certificate in a condemnation case and [no] risk in dissolving the Corporation," it is clear that the defendants were made aware of the existence of the contingent liability of the Corporation for a possible payback in the event the condemnation award was less than the amount paid pursuant to the "drawdown" order. And,

although it is not necessary for a corporation to satisfy contingent liabilities upon dissolution, it is required to make provision for the discharge of such liabilities before distributing its remaining assets to its shareholders. 16A William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 8126 (perm. ed. rev. vol. 1995). Yet, the defendants voted for or assented to a distribution of all the Corporation's assets without making provision for payment of the contingent liability.

In an apparent effort to excuse their failure to make such provision, the defendants introduced the testimony of Neil H. Demchick, an accountant and financial consultant. He testified that in 1985 the payback liability of the Corporation was contingent only and that under generally accepted accounting principles, this contingent liability could not have been properly recorded in financial statements. But whether it is necessary to report a contingent liability in financial statements begs the question whether a corporation may dissolve and distribute all its assets to shareholders without making provision for the payment of a liability, albeit contingent, that is imposed as the result of a statutory provision and a court order. It should not be necessary to say that general accounting principles cannot render meaningless the provisions of a statute and a court order.

We conclude that, at the time they voted for or assented to the distribution of the Corporation's assets, the defendants had, within the meaning of Code § 13.1-690(B), "knowledge or information" that the condemnation award possibly would be less

than the amount distributed under the "drawdown" order. And this knowledge or information was sufficient as a matter of law to make the defendants' reliance upon the opinions of Saunders and Pontynen unwarranted. Since such reliance was the sole basis for the trial court's ruling that the defendants acted in good faith with respect to the distribution of the Corporation's assets, it follows that the ruling was erroneous.

This results in reversal of the judgment of the trial court. The defendants say that we should not enter final judgment in the event of reversal but should remand because a question remains whether James and Jerry Matyiko were directors of the Corporation. However, no such question remains.

In their brief in opposition, the defendants assigned cross-error asserting only that "[t]he trial court erred in receiving as prima facie evidence against appellee Jerry Matyiko" the Corporation's statement of intent to dissolve, but we refused that assignment of cross-error at the time we awarded the Commissioner an appeal. So Jerry Matyiko is seeking to revive a dead issue. No cross-error was assigned with respect to James Matyiko, which is understandable. In his capacity as corporate secretary, he signed the statement of intent to dissolve, which listed him as a director. So, beside being late, James Matyiko seeks to raise what, in the most charitable of terms, may be described as a meritless claim. In any event, none of this offers any reason for this Court to refrain from entering final judgment.

In his motion for judgment, the Commissioner sought recovery of $137,965, which equals the amount of the excess payment in the

"drawdown," plus 8% interest from March 28, 1985, the date the certificate of take was filed, until paid, plus costs. However, the Commissioner now asks for judgment in the lesser amount of $105,765, which equals the amount included in the "drawdown" for damages to the residue, plus the same provisions for interest and costs. Accordingly, we will enter final judgment against the defendants in favor of the Commissioner for $105,765, plus 8% interest from March 28, 1985, until paid and costs.

<u>Reversed and final judgment</u>.