**INITIATIVES, INCORPORATED,**
Plaintiff,

v.

**KOREA TRADING CORPORATION,**
Defendant.

**No. CIV.A. 97–435A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 18, 1997.

Mark C. Hayes, Law Offices of Mark C. Hayes, P.C., Alexandria, VA, for Initiatives, Inc.

Daniel Mark Press, Chung & Press, PC, McLean, VA, for Korea Trading Corp.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens. On September 26, 1997, this Court ordered additional discovery to resolve the personal jurisdiction and forum non conveniens issues.[1]

### I.

The Plaintiff, Initiatives, Inc. ("Initiatives") is a Virginia corporation specializing in international export management, consulting, and trading. Defendant, Korea Trading Corp. ("KTC"), is a Korean importer and exporter. On October 1, 1986, Initiatives and KTC executed an agreement (the "Litton contract") which provided a method for KTC to pay Initiatives for Initiatives' previous work in arranging for KTC to act as an agent of the Litton Corporation ("Litton"). Under the contract, Initiatives agreed to "maintain and expand that relationship (between Litton and KTC) and to seek additional business opportunities between Litton and KTC."

In March, 1997, Initiatives filed a complaint claiming that KTC failed to discharge its obligations under the Litton contract. KTC claims that the complaint should be dismissed for lack of personal jurisdiction and forum non conveniens.

### II.

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action lacking the requisite personal jurisdiction. A district court applies the relevant state statute to determine whether the court has personal jurisdiction over a defendant. *See* Fed. R.Civ.P. 4(e)-(f).

Determining whether personal jurisdiction exists is a two-step process which requires assessing (1) whether the particular facts and circumstances of a case fall within the state's statutory language and (2) whether the Due Process Clause of the Constitution would permit such jurisdiction to be asserted. *Ellicott Mach. Corp., Inc. v. John Holland Party, Ltd.,* 995 F.2d 474, 477 (4th Cir.1993). Virginia's long-arm statute extends personal jurisdiction to the fullest extent permitted by due process. *English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir. 1990).

The plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). Resolution of the jurisdictional issue is a matter for the court. *Id.*

In this case, over one month ago, the Court noted that jurisdiction turned on factual questions and instructed the parties to conduct additional discovery. The Court allowed Initiatives to depose KTC's president by telephone because she is in Korea. However, no such deposition occurred.

Despite the conflicting affidavits submitted by the parties' presidents, neither party has requested a hearing. Both parties have had a sufficient opportunity to develop the record. Consequently, the Court may resolve

---

1. Defendant's Motion originally alleged improper service as a grounds for dismissal. The Court rejected that argument in a written opinion on October 31, 1997.

the issue based on the affidavits and the supporting documents. *See Bowman v. Curt G. Joa, Inc.*, 361 F.2d 706, 716–17 (4th Cir. 1966). Moreover, the record does not indicate that a hearing would be helpful.

### III.

The portion of Virginia's long-arm statute relied on by Initiatives provides that:

A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

1. Transacting any business in this Commonwealth[.]

Va.Code § 8.01–328.1 (1992).

Due process is satisfied where the defendant has enough " 'minimum contacts' " with the forum state such that requiring him to defend his interests there would not " 'offend traditional notions of fair play and substantial justice.' " *English & Smith*, 901 F.2d at 38 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Furthermore, the minimum contacts with the state must be such that the defendant could "reasonably anticipate being haled into court there." *Id.* at 40 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). " 'It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.' " *Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 658 (4th Cir.1989)(quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

The Supreme Court has outlined five factors to be considered in determining whether the exercise of personal jurisdiction would be reasonable: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World–Wide Volkswagen Corp.*, 444 U.S. at 292; *Ellicott Mach. Corp., Inc.*, 995 F.2d at 479. In considering these factors in regards to defendants from a foreign country, the Supreme Court has warned:

The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.

*Asahi Metal Indus. v. Superior Court of Cal.*, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)(quotation omitted); *Ellicott Mach. Corp., Inc.*, 995 F.2d at 477.

When a state's long-arm statute extends personal jurisdiction to the fullest extent permitted by due process, the statutory inquiry and constitutional inquiry essentially merge. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir.1997)(citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir.1996)).

A defendant's contacts with the forum state can lead to "specific jurisdiction" or "general jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *ESAB Group, Inc.*, 126 F.3d 617, 623. Specific jurisdiction results when the cause of action arises from the defendant's contacts with the forum state. *Id.* General jurisdiction may be asserted when the defendant's contacts with the forum state have been "continuous and systematic." *Id.*

Initiatives contends that jurisdiction is proper under either approach.

## A. Specific Jurisdiction

■ The mere existence of a contract with the out-of-state party cannot automatically establish sufficient minimum contacts. *Chung v. NANA Dev. Corp.*, 783 F.2d 1124, 1127–28 (4th Cir.1986). Rather, in determining whether the defendant purposefully established minimum contacts with the forum state, courts must consider " 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.' " *Id.* at 1128 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

The Litton contract, which is half of a page in length, mentions Initiatives' past and future services in obtaining business opportunities between Litton and KTC, but it does not describe those services with any detail. The contract also provides no indication of where those services have been or will be performed. Additionally, while the contract specifies an amount of payment and when payment is to occur, it fails to specify where or how payment is to be made. Therefore, the terms of the contract provide no assistance in determining whether KTC "purposefully availed" itself of Virginia law.

As a result, the Court must examine the representations of the parties regarding prior negotiations, contemplated future consequences, and their actual course of dealing.

The relationship between Initiatives and KTC began when Initiatives' president, General John J. Koehler, Jr., solicited business from KTC in Korea. The parties executed the Litton contract in Korea. Initiatives does not dispute KTC's claim that none of its officers, directors, or employees visited Virginia in connection with the contract. However, jurisdiction may be proper even if the defendant does not physically enter the forum state. *Burger King Corp.*, 471 U.S. at 476.

The parties agree that KTC made telephone calls and sent letters and facsimile transmissions to Initiatives' office in Virginia regarding the Litton contract. However, telephone calls, letters, and faxes alone are insufficient to form a basis for personal jurisdiction. *Superfos Investments Ltd. v. First-Miss Fertilizer, Inc.*, 774 F.Supp. 393 (E.D.Va.1991); *Unidyne Corp. v. Aerolineas Argentinas*, 590 F.Supp. 391, 396 (E.D.Va. 1984).

The remaining concern, therefore, is performance of the contract. Litton contends that it performed a significant amount of work in Virginia in satisfying its obligations under the Litton contract. However, if activity in Virginia was not contemplated by the contract or conducted at Initiatives' direction, and was therefore unilateral, it will not satisfy the minimum contacts requirement. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416–17; *Hanson*, 357 U.S. at 253.

Initiatives' president claims that Initiatives served as KTC's agent in Virginia and, at KTC's direction, visited Litton's Virginia offices on a weekly basis since 1986. In addition to affidavits from its president, Initiatives provides correspondence with KTC, a KTC advertising brochure containing Initiatives' name and address, copies of other agreements between Initiatives and KTC, an affidavit from a former KTC director, an agenda for a meeting between KTC and Initiatives, and answers to interrogatories.

KTC's president states in an affidavit that "it was expected that services (under the Litton contract) would be performed in Korea and California." She claims that "[t]here was no reason for services to be performed in Virginia." She further states that KTC's performance occurred in Korea, as the parties expected. She also notes that several of KTC's payments under the contract occurred in person in Korea, which is supported by the documents submitted by Initiatives. KTC also refers the Court to its answers to interrogatories, and has submitted a November, 1993 declaration of George Sullivan, the Director of Litton Data Systems at the time. In his declaration, Sullivan states that performance under the agreement between Litton and KTC has occurred solely in Korea and California.

The correspondence between Initiatives and KTC, the meeting agenda, and the Litton contract itself do not contain any indications that KTC expected Initiatives to conduct business on its behalf in Virginia.

Furthermore, the contract and the correspondence do not demonstrate that Initiatives had the authority to act as KTC's agent in dealing with Litton. In addition, while the advertising brochure provides Initiatives' name and address, it does not indicate that Initiatives is anything more than an American contact for KTC. Other agreements between Initiatives and KTC provide that Initiatives has "representation authorization" from KTC, and contain Virginia choice-of-law provisions, but neither are included in the Litton contract.

Consequently, in determining whether there is specific personal jurisdiction, the Court must rely on the affidavits and answers to interrogatories. As discussed, the affidavits from Initiatives' president, Gen. Koehler, and KTC's president, Bang Young Shin, are in direct conflict. Not surprisingly, KTC's answers to interrogatories are consistent with Shin's affidavit.

In contradiction of Shin's affidavit, Colonel Yi, J.Y., a former director of KTC, states in an affidavit that he and Shin frequently requested Initiatives to take action on KTC's behalf in Virginia. In contradiction of Gen. Koehler's affidavit, Sullivan states that KTC only conducted business with Litton in Korea and California. He does not state that KTC dealt with Litton through Initiatives in Virginia.

■ Because the Plaintiff must demonstrate personal jurisdiction, it bears the burden of proving that its version of the parties' relationship is accurate and that the Defendant's version is not. Initiatives has not met that burden. The only evidence it offers that contradicts KTC's two affidavits are Gen. Koehler's and Col. Yi's affidavits. Its other submissions fail to show that, in connection with the Litton contract, KTC has purposefully availed itself of the benefits and protections of Virginia law. Therefore, the Court cannot exercise specific personal jurisdiction over KTC.

### B. General Jurisdiction

As previously discussed, for this Court to exercise personal jurisdiction, Virginia law and due process must be satisfied. Even though Virginia law extends personal jurisdiction to the outermost boundaries of due process, the possibility that a defendant's contacts with Virginia could satisfy due process but not the long-arm statute remains. *DeSantis v. Hafner Creations, Inc.,* 949 F.Supp. 419, 423 (E.D.Va.1996) (citations omitted).

■ Under Virginia law, where the exercise of personal jurisdiction is based on the defendant's business transactions in Virginia, the cause of action must *arise from* those transactions. *Gallop Leasing Corp. v. Nationwide Mut. Ins. Co.,* 244 Va. 68, 418 S.E.2d 341, 342 (1992) (emphasis in original); Va.Code § 8.01–328.1 (1992). Consequently, a plaintiff is precluded from asserting that a defendant's business transactions in Virginia, which are unrelated to the cause of action, support the exercise of jurisdiction. In other words, while the exercise of general personal jurisdiction in this case might not violate due process requirements, it would violate Virginia law. Regardless, Initiatives fails to show that KTC's contacts with Virginia regarding the Litton contract and other matters are sufficient to establish jurisdiction.

■ General jurisdiction may be asserted when the defendant's contacts with the forum state have been "continuous and systematic." *ESAB Group, Inc.,* 126 F.3d 617, 623. Initiatives has provided several contracts between itself and KTC, however, none of those contracts indicate that performance is to occur in Virginia. Like Litton, the two companies concerned in the contracts, Jaeger Aerospace Engineering Corp. and Cubic Corp., are based in California.

■ Two of the contracts contain Virginia choice-of-law provisions, but these provisions do not demonstrate that KTC's contacts with Virginia have been continuous and systematic. Furthermore, while such provisions are relevant in determining whether a defendant purposefully availed itself of a particular state's law, they cannot alone establish jurisdiction. *Burger King Corp.,* 471 U.S. at 481–82.

Initiatives fails to meet its burden in demonstrating that KTC has had continuous and systematic contacts with Virginia. As a re-

sult, the exercise of general jurisdiction would be inappropriate.

### IV.

Initiatives has failed to meet its burden in demonstrating personal jurisdiction. The Court cannot conclude that Initiatives' or the Commonwealth of Virginia's interests in having this lawsuit litigated in Virginia outweigh the substantial burden that would be placed on KTC in requiring it to defend itself in the United States.

Accordingly, Defendant's Motion to Dismiss is GRANTED and Plaintiff's complaint is dismissed without prejudice to refile in a court which may properly exercise personal jurisdiction.

An appropriate Order shall issue.