# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Per Sjolinder
and Pamela Sjolinder

v.

American Enterprise
Solutions, Inc., et al.

Case No. (Law) 99-186

By Judge Edward L. Hogshire

October 6, 2000

In this civil action for numerous claims including breach of contract and violation of standards of conduct and fiduciary duty, individual Defendants Cardwell C. Nuckols, Chuck Broes, and Anthony F. Maniscalco (collectively, the "Individual Defendants") have appeared specially by counsel and filed a motion to dismiss alleging that this Court does not have personal jurisdiction over them. After reviewing the briefs and evidence of the parties and listening to oral argument, for the reasons set forth below, the Court will grant the Individual Defendants' motion.

## *Statement of Facts*

Plaintiffs Per Sjolinder and Pamela Sjolinder brought this action against Defendants American Enterprise Solutions, Inc. ("AESI"), its wholly owned subsidiaries, Scandia Centrum of Rehab Medicine, Inc. ("Scandia Centrum") and Scandia Spine Rehab, Inc. ("Scandia Spine") (collectively, the "Corporate Defendants") and the Individual Defendants. In Counts I and II of their motion for judgment, Plaintiffs seek to recover damages from Corporate Defendants for breach of an Employment Agreement and for failure to repay loans made

by Mr. Sjolinder. In Count V of their motion for judgment, Plaintiffs also seek to recover from Corporate Defendants under a claim of unjust enrichment.

Solely at issue in this motion are Counts III and IV. In Count III, Plaintiffs, as creditors, allege that the Individual Defendants violated standards of conduct and breached fiduciary duties in the discharge of their duties as directors of Scandia Centrum, Scandia Spine, and "their alter ego" AESI. In Count IV, Plaintiff, Mr. Sjolinder, alleges as a shareholder of AESI, that the Individual Defendants violated standards of conduct and breached fiduciary duties in the discharge of their duties as directors of AESI.

Mr. Sjolinder incorporated Scandia Centrum in January 1990 and Scandia Spine in 1996. Scandia Centrum is a Virginia corporation with its principal place of business in the City of Charlottesville. Scandia Spine is a Virginia corporation with its principal place of business in Atlanta, Georgia. Until February 22, 1999, Mr. Sjolinder was the sole shareholder and president of Scandia Centrum and Scandia Spine. Mrs. Sjolinder was Secretary-Treasurer of Scandia Centrum and Secretary of Scandia Spine. Plaintiffs' principal place of business at the time this suit was commenced was in the City of Charlottesville. AESI is a Florida corporation with its principal place of business in Tampa, Florida.

The Individual Defendants are and were at all times relevant to the allegations in the Motion for Judgment residents of the State of Florida. The Individual Defendants did not become either officers or directors of Scandia Centrum or Scandia Spine until April 29, 1999. None of the Individual Defendants traveled to Virginia for any pre-contract negotiations relating to AESI's acquisition of the stock of Scandia Spine and Scandia Centrum.

All documents, whereby Mr. Sjolinder transferred all of his stock in Scandia Centrum and Scandia Spine to AESI in exchange for 87,000 shares of common stock of AESI and certain other commitments and undertakings of AESI, and Mr. Sjolinder's Employment Agreement were signed by the parties on February 22, 1999, in Tampa, Florida. After this closing on the acquisition, none of the three Individual Defendants ever came to Virginia on any matter relating to this suit.

*Discussion*

The Court's exercise of personal jurisdiction over an out-of-state defendant is governed by Virginia's long-arm statute, Virginia Code § 8.01-

328.1(A).[1] In this case, Plaintiffs have the burden of demonstrating that this Court can exercise personal jurisdiction over the individual defendants by a preponderance of the evidence. *See Initiatives, Inc. v. Korea Trading Corp.*, 991 F. Supp. 476, 477 (E.D. Va. 1997); *Mylan Laboratories, Inc. v. Akzo N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Although the Virginia Supreme Court has interpreted the long-arm statute as a "single-act" statute, whereby a single act by a nonresident which satisfies one of the prongs of § 8.01-328.1(A) and gives rise to a cause of action may be sufficient to confer jurisdiction upon a Virginia court, a court only has jurisdiction over a cause of action that arises from that single act. *See Nan Ya Plastics Corp. v. DeSantis*, 237 Va. 255, 260 (1989); *Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 740 (1971).

Count III alleges the violation of standards of conduct and breach of fiduciary duty by the three Individual Defendants as directors of Scandia Centrum, Scandia Spine, and "their alter ego" AESI. However, the Individual Defendants are not subject to personal jurisdiction in Virginia merely because they serve as officers or directors of a corporation that is subject to personal jurisdiction in the state. *See Columbia Briargate Co. v. First National Bank*, 713 F.2d 1052, 1064-65 (4th Cir. 1983), *cert. denied, Pearson v. Columbia Briargate Co.*, 465 U.S. 1007 (1984). Even if AESI is the alter ego of Scandia Centrum and Scandia Spine, it is not relevant to this decision because where a corporation itself is transacting business in Virginia, its officers and directors are not subject to jurisdiction in Virginia absent some additional showing. *See Miller and Rhoads v. West*, 442 F. Supp. 341 (E.D. Va. 1977) (holding that non-resident officers and directors of a foreign corporation are beyond the reach of Virginia's long-arm statute because such officers and directors did not transact any business in Virginia within the meaning of Virginia Code § 8.01-328.1(A)(1) because they were acting in their corporate capacities); *see*

---

[1] The relevant part of the long-arm statute provides that a Virginia "court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this Commonwealth; (2) Contracting to supply services or things in this Commonwealth; (3) Causing tortious injury by an act or omission in this Commonwealth; (4) Causing tortious injury by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth ... and (6) Having an interest in, using, or possessing real property in this Commonwealth." Virginia Code § 8.01-328.1(A)(1), (2), (3), (4), and (6).

*also Columbia Briargate*, 713 F.2d at 1064-65 (holding a Texas resident subject to jurisdiction where he committed a tort in the forum state).

In Virginia, for a court to exercise jurisdiction over a non-resident defendant, the acts conferring jurisdiction under the statute must coincide with the acts giving rise to the claim. *See, e.g., Raymond, Colesar, Glaspy & Huss v. Allied Capital*, 761 F. Supp. 423, 426 (E.D. Va. 1991) (quoting *Kolbe*, 211 Va. at 740). Indeed, the two cases, *Krantz v. Airline Pilots Ass'n, Int'l.*, 245 Va. 202 (1993), and *Telco Communications v. An Apple A Day*, 977 F. Supp. 404 (E.D. Va. 1997), that Plaintiffs cite as holding that physical presence is not required to exercise personal jurisdiction over an out-of-state defendant under Virginia Code § 8.01-328.1(A)(3) actually confirm that an additional act, an element of the tort, had to occur in Virginia to confer personal jurisdiction. *See Krantz*, 245 Va. at 206 (finding that it was the use of ACCESS, a Virginia facility, to transmit negative comments about Krantz to United that constituted "an act . . . in this Commonwealth" within the meaning of Code § 8.01-328.1(A)(3)); *see Telco*, 977 F. Supp. at 408 (holding that an element of the tortious act fit into the *Krantz* jurisdictional net because but for the use of internet service providers and users resident in Virginia, the publication requirement of the tort of defamation would not have been satisfied).

The acts that the Plaintiffs claim as the basis for asserting that the Individual Defendants transacted business in Virginia were acts undertaken in their capacities either as officers or directors of the corporations. Giving directions to Virginia employees is part of the standard managerial duties that officers of a corporation must perform. When Maniscalco and Nuckols conferred with Moneywise about payroll and payroll tax issues, with NationsBank concerning signature cards, with Gregory Johnson about tax-free reorganizations of Scandia Centrum and Scandia Spine, with vendors about accounts payable, and with the landlord's agent about lease renewal or extension issues, in all cases they were acting on behalf of Scandia Centrum and Scandia Spine. Broes, Nuckols, and Maniscalco have testified that they have neither solicited any business in Virginia as individuals, nor have they individually engaged in any persistent course of conduct in Virginia.

Cases cited by Plaintiffs to try to extend the reach of the corporate jurisdiction to the Individual Defendants are inapposite. The Plaintiffs rely principally on *Columbia Briargate*, 713 F.2d at 1964; *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522 (4th Cir. 1987); *Commonwealth Transp. Comm'r v. Matyiko*, 253 Va 1 (1997); *In re County Green Limited Partnership*, 604 F.2d 289 (4th Cir. 1979); *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531 (4th Cir. 1988); *C.T.I. Corp. v. Reading Industries Corp.*, 22 Va. Cir. 64 (Fairfax County 1990); and *Elefteriou v. Tanker Assocs.*, 443 F.2d

185 (4th Cir. 1971). An examination of each of these cases reveals that none of these support the Plaintiffs' position on this motion.

In *Columbia Briargate*, a bank official, Vaughn Pearson, was sued individually and as vice-president of the co-defendant, First National Bank. 713 F.2d at 1053-54. However, in that case the court permitted Pearson to be joined as a defendant because his activities physically occurred in the forum state, South Carolina, over several days. *See Columbia Briargate*, 713 F.2d at 1053-54. Furthermore, the *Columbia Briargate* court quoted with approval the *Idaho Potato Commission v. Washington Potato Commission*, 410 F. Supp. 171, 182 (D. Idaho 1976), decision which distinguished between the "situation where the non-resident agent had come into the forum state and committed there the alleged tort and that where the non-resident agent had never been in the state and had no causal connection within the state with the alleged tort." *Columbia Briargate*, 713 F.2d at 1060. Accordingly, in the Court's opinion, the *Columbia Briargate* decision supports the Individual Defendants' motion to dismiss.

The Court agrees with the Individual Defendants' assertion that *Matyiko*, 253 Va. at 6-8; *County Green*, 604 F.2d at 293-4; *McElhone*, 841 F.2d at 534-35; *C.T.I. Corp.*, 22 Va. Cir. at 65, stand for the limited proposition, not present here, that directors of an insolvent or dissolving entity may be liable to creditors for depleting assets which would otherwise be subject to creditor recourse.

In Count IV, Mr. Sjolinder claims that he has sustained damages as a shareholder of AESI, a Florida corporation. In *Pittsburgh Terminal*, the Fourth Circuit relied upon the strong interest that the forum state, West Virginia, has in hearing claims against directors of a West Virginia corporation. 831 F.2d at 524. Conversely, Virginia has an extremely limited interest in hearing, and indeed it may be inappropriate for a Virginia court to hear, complaints against the directors of a Florida Corporation.

In conclusion, Plaintiffs have failed to prove that this Court may exercise personal jurisdiction over the Individual Defendants in this case.

January 11, 2001

In this civil action for numerous claims including breach of contract and violation of standards of conduct and fiduciary duty, this Court issued a letter opinion on October 6, 2000, granting the Individual Defendants' Motion to Dismiss. Plaintiff filed a Petition to Rehear this motion.

After careful review of the briefs and listening to oral argument, it is the opinion of this Court that the decision set forth on October 6, 2000, was correct. The Petition to Rehear is therefore denied.